*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re T. L. TODD, Minor.

UNPUBLISHED
November 10, 2022

No. 361681
Muskegon Circuit Court
Family Division
LC No. 16-001654-NA

Before: SAWYER, P.J., and MARKEY and SWARTZLE JJ.

PER CURIAM.

Respondent was homeless, unemployed, and arrested for arson when she left her biological child without proper care and custody. As a result, the Department of Health and Human Services petitioned to remove the child from her care. Respondent did not meaningfully participate in the services to which she was referred by the Department, and she was unable to rectify her barriers to reunification with the child. The trial court terminated her parental rights to the child under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. BACKGROUND

At the beginning of the case, respondent had several misdemeanor charges for which she was being detained in the Muskegon County Jail. Respondent was later found to be not competent in her criminal proceedings. The Department provided respondent with a Parent-Agency-Treatment plan that included a psychological evaluation, a psychiatric evaluation, parenting mentorship, counseling, and Section 8 housing. Respondent completed some of the services that were provided to her, but she did not complete the psychiatric evaluation, discontinued her parenting mentorship, and only found housing one week before the termination hearing.

The trial court found clear and convincing evidence to terminate respondent's parental rights, and that termination was in the best interests of the child.

Respondent now appeals.

## II. ANALYSIS

### A. REASONABLE EFFORTS

Respondent first argued that the Department did not provide her with reasonable accommodations for her mental health. "We review the trial court's findings regarding reasonable efforts for clear error." *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

Petitioner "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). Included in the requirement to make reasonable efforts is the creation of a service plan, which outlines the steps that the agency and the parent "will take to rectify the issues that led to court involvement and to achieve reunification." *Id.* at 85-86 (cleaned up). While petitioner "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Respondent argued that the Department failed to accommodate her disability, but she ignored that she refused to engage with the psychiatric evaluation to determine what accommodations would be appropriate. Respondent did not undertake her commensurate responsibility to participate in the services that were offered. *Id.* Further, during the pendency of the case, respondent did not request any alternative services that would accommodate her disability, and she did not argue on appeal what services would have been appropriate to accommodate her disability. "But, when challenging the services offered, mother must establish that she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App 252, 266; 976 NW2d 44 (2021). "Without an identification of services to accommodate mother's intellectual disability, we are left to speculate what other service the [Department] *could* have offered." *Id.*

### B. STATUTORY GROUNDS

Next, respondent argued that the trial court erred by finding that a statutory ground existed for termination. "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App at 33. When applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id.*

The trial court terminated mother's parental rights to the child under MCL 712A.19b(3)(c)(*i*), (g), and (j). MCL 712A.19b(3)(c)(*i*) provides as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

MCL 712A.19b(3)(c)(*i*) is appropriate "when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services[.]" *In re White*, 303 Mich App at 710 (cleaned up).

There were more than two years between the preliminary hearing authorizing the petition to remove the child from respondent's care and the termination hearing. Therefore, the 182-day statutory period was satisfied.

The conditions listed in the petition, regarding respondent's barriers to reunification with the child, included respondent's arrests, the child's truancy, respondent's mental health, respondent's lack of employment, and respondent's homelessness. Although the Department referred respondent to a psychiatric evaluation, mental-health counseling, parenting mentorship, and Section 8 housing, respondent consistently refused to engage in those services and she actively dropped out of the mentorship program. Respondent even admitted that she stopped talking to her providers, she did not engage with her psychiatric assessment, and she remained unemployed.

Even though respondent had received housing days before the termination hearing, and she had started taking medication prescribed by her family physician, respondent's barriers to reunification remained unchanged.

Given respondent's inconsistent engagement with the services she was provided, we are not left with a definite and firm conviction that a mistake has been made. See *In re Ellis*, 294 Mich App at 33. "[T]he totality of evidence amply" supports that respondent "had not accomplished any meaningful change" in the conditions that led to adjudication because she had not addressed the conditions that led to her mental-health concerns and she continued to have problems involving her lack of appropriate employment and housing throughout the case. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Therefore, the record supports that the trial court did not clearly err when it found by clear and convincing evidence that mother's conditions continued to exist.

If at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

## C. BEST INTERESTS

Lastly, respondent argued that termination of her parental rights was not in the child's best interests. "Once a statutory ground for termination has been proven, the trial court must find that

termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App at 33.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. With respect to the children's best interests, this Court places its focus on the children rather than the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (cleaned up). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

The trial court was presented with evidence that respondent had mental health issues that would leave the child in danger of being harmed if in respondent's care. Specifically, when respondent first got arrested, the child was left homeless and with a relative of respondent's that resulted in the child sleeping on the floor. Additionally, caseworkers testified that there were concerns that respondent was telling the child inappropriate things about her foster family when they went to the bathroom together during parenting-time visits. Even though the child expressed that she had a bond with mother, it was also reported that the child had bonded to the foster family.

Furthermore, the child's well-being while in the care of her foster families, as contrasted to her well-being while in the care of respondent, demonstrated that termination and adoption were in her best interests. Specifically, while the child was in respondent's care she had missed several days of school, but the child was doing well in school while in the care of the foster family. The child also completed psychological evaluations while with her foster family.

Respondent's lack of parenting ability, and her unwillingness to take consistent steps to demonstrate that there would be finality to her housing instability, mental-health issues, and unemployment, demonstrates that termination was in the child's best interests. See *In re Olive/Metts Minors*, 297 Mich App at 41-42.

Given the evidence presented in this case, we are not left with a definite and firm conviction that a mistake has been made. See *In re Ellis*, 294 Mich App at 33. Therefore, the record supports that the trial court did not clearly err when it found by a preponderance of evidence that termination and adoption was in the child's best interests.

Affirmed.

/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Brock A. Swartzle